177 So.2d 25 (1965)
Mauriece COFFMAN and Shirley V. Coffman, husband and wife, et al., Appellants,
v.
Eugene N. JAMES and Dorothy M. James, husband and wife, Appellees.
No. F-408.
District Court of Appeal of Florida. First District.
June 15, 1965.
Rehearing Denied August 6, 1965.
*26 Allen W. Lindsay, Sr., and Earl L. Lewis, Milton, for appellants.
J. Paul Fitzgerald, Milton, for appellees.
STURGIS, Chief Judge.
Appellants, plaintiffs below, brought this suit against the owners of a parcel of land alleged to be a part of Highand Park Subdivision in Santa Rosa County, Florida, to enjoin the constructing thereon of a multiple unit apartment house in violation of restrictive covenants alleged to run with the land.
In answer to the complaint defendants admitted that restrictive covenants were imposed on the land in said subdivision, providing in pertinent part: 1) That no lot shall be used except for residential purposes. 2) That "no building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling * * *." Defendants affirmatively alleged, however, that the unnumbered parcel in dispute whereon they were in process of erecting an apartment house containing multiple-family units was not a part of said subdivision and therefore is not subject to said restrictive covenants; further, that it was never their purpose to include said parcel in said subdivision or to impose said restrictive covenants against the same; that on the contrary, it was always their intention to use said parcel for business purposes and that they had so used it with plaintiffs' knowledge at all times since September 1955; that they had expended in excess of $11,000 in constructing said apartment house thereon and, in effect, that the plaintiffs, by having acquiesced in defendants' use of said parcel as commercial property, were estopped to complain of the alleged violation of the restrictive covenant.
In denying motion of defendants for summary decree, the chancellor pertinently stated that the affidavits in support thereof were "not sufficient to overcome the mandate of the statute under which the subdivision plat was prepared, certified, filed, approved and offered to the real estate market." Pursuant *27 to a pretrial conference an order was entered whereby the parties admitted:
1. That the parcel designated "A" on the plat of said subdivision is not a part thereof. [We pause to note that this parcel, which is church property, is not involved by the issues developed in this cause, and its status, therefore, has no bearing on the result.]
2. (a) That on November 7, 1958, defendants conveyed Lot 6, Block 4, of said subdivision to James G. Blair, Jr., et ux, who on December 19, 1961, conveyed the same to the present owners, plaintiffs Mauriece Coffman et ux.
(b) That on May 12, 1957, defendants conveyed Lot 1, Block 4, of said subdivision to J.D. Hembree et ux, who on November 5, 1957, conveyed the same to the present owners, plaintiffs Cary A. McArthur et ux.
(c) That on March 11, 1957, defendants conveyed Lot 4, Block 4, of said subdivision to J.D. Hembree et ux, who on June 18, 1957, conveyed the same to the present owners, plaintiffs Edwin Maurice Shelly et ux.
(d) That on March 11, 1957, defendants conveyed Lot 3 of Block 4 of said subdivision to J.D. Hembree et ux, who on July 12, 1957, conveyed to the present owners, plaintiffs Calvin M. McGowin et ux.
(e) That on April 21, 1958, defendants conveyed Lot 5, Block 4, of said subdivision to Joseph O. Fancher et ux, who on July 26, 1960, conveyed to Thomas J. Champagne et ux, who on February 27, 1963, conveyed to Monsanto Chemical Company, who on July 3, 1963, conveyed to the present owners, plaintiffs Jerry K. Broxson et ux.
The pretrial order entered in evidence by agreement of counsel:
1. Restrictive covenants recorded in Deed Book 125, at page 465, of the public records of Santa Rosa County, as plaintiffs' exhibit 1.
2. Restrictive covenants recorded in Deed Book 131, at page 4, of said public records, as defendants' exhibit 1.
3. The recorded plat of Highland Park Subdivision, as defendants' exhibit 2.
4. Restrictive covenants recorded in Deed Book 126, at page 91, of said public records, as defendants' exhibit 3.
Said order stated the issues for trial as follows:
1. Is the area in question a portion of Highland Park Subdivision, and if so, do the restrictive covenants mentioned above apply to said area?
2. Has defendants' use of the area in question been such as to negate an intent that said area would be subject to said restrictive covenants?
3. If said area is subject to the restrictive covenants, are plaintiffs entitled to injunctive relief or left to actions at law for damages?
The order also provided that no formal proof should be required as to the matters specifically admitted or for the admission into evidence of the identified exhibits, but that proof of all other issues would be required at the trial of the cause.
The chancellor heard the evidence and on the basis of the pleadings and proofs entered a final decree holding that the parcel in dispute is not a part of said subdivision and is not, therefore, subject to the alleged restrictive covenants; and on that premise dismissed the suit with prejudice, hence this appeal. We are called on to determine whether or not the proofs and applicable law support said decree which comes to this court clothed with a presumption of correctness. The facts upon which the issues turn are not in material dispute, hence our primary concern is with the applicable law.
We here project a sketch of that part of the recorded plat of Highland Park Subdivision in which lies the land owned by plaintiffs and defendants.
*28 
*29 The references thereon to ownership do not appear on the recorded plat. The measurements of the numbered lots in Block 4 are not shown. The NW Corner of "That Portion of NW 1/4 of NE 1/4 of Section 4, T 1 N, R 28 W, Lying North of Lake" is indicated thereon. The foregoing quoted description is that specifically shown by the plat as the property included in the subdivision.
Chapter 177, Florida Statutes, F.S.A., relating to recorded maps and plats, provides in pertinent part:
(a) "177.05 Description written on map or plat.  There shall be written or printed upon the tracing cloth on which map or plat shall be made a full and detailed description of the land embraced in said map or plat showing the township and range in which such lands are situated and the section and parts of sections platted. * * *
(b) "The description must be so complete that from it without reference to the plat, the starting point can be determined and the outlines run."
(c) "177.06 Dedication.  In connection with the description there shall be a dedication of the plat by the owner or owners, and his or their wives, whose signatures must be witnessed, and their execution of the dedication must be acknowledged in the same manner as deeds conveying lands are required to be witnessed and acknowledged; and in all cases the title, caption and dedication must agree."
(d) "177.07 Permanant reference monuments.  In making the survey a sufficient number of permanent monuments, in no case less than two and in no case more than two thousand feet apart, shall be placed either within the tract or on the exterior boundaries thereof, or both, so as to provide definite reference points from which may be located any points, lines or lots set forth on the said plat. The monuments so placed shall be of metal not less than three inches in diametor and twenty-four inches long, driven in the ground, or if smaller, to be incased in a solid block of concrete, said monuments having the reference point marked thereon. They shall have their position in reference to each other indicated by distances and angles and not less than one of said monuments shall have its location indicated on the plat in reference to the nearest government corner or other corner referred to in § 177.05. The position of said monuments shall be indicated on the plat by a small circle and shall be marked `PERMANENT REFERENCE MONUMENT' or the initials `P.R.M.' to designate the same."
(e) "177.08 Drawing specifications for map or plat.  * * *
"All lots shall be numbered either by progressive numbers, or if in blocks, progressively numbered in each block, and the blocks progressively numbered or lettered, except that blocks in numbered additions bearing the same name shall be numbered consecutively throughout the several additions. Excepted parcels must be marked `Not included in this plat.'" (Emphasis supplied)
Treating these provisions in relation to that plat of Highland Park Subdivision, we find:
(a) The following is written in bold lettering on the face of the plat:
"THAT PORTION OF NW 1/4 of NE 1/4 OF SECTION T 1 N, R 28 W, LYING NORTH OF LAKE."
(b) The above property description is such that without reference to the plat the *30 starting point of the subdivision can be determined and the outlines run.
(c) The plat is dedicated in statutory form by the defendant owners.
(d) The plat indicates (by a small inked square and the initials "P.R.M.") that permanent reference monuments are located at four points on the land described as included in the subdivision: One at the NE Corner of Lot 1, Block 1 of said subdivision, which point (not shown by the sketch) is 30 feet South of the NE Corner of NW 1/4 of NE 1/4 of Section 4, T 1 N, R 28 W; one at the SE Corner of said Block 1; and the other two as indicated by the within sketch.
The plat act is designed to inform the public, and especially innocent purchasers of property in the subdivision, of the facts. The plat should be construed against the developer who created it and chose words with reference to it. The same is to be interpreted according to the ordinary usage of the words, signs and symbols thereon, coupled with statutory provisions governing the same. Servando Building Company v. Zimmerman, 91 So.2d 289 (Fla. 1956). To hold that excepted parcels need not be marked "Not included in this plat" would defeat the purpose of F.S. 177.08, F.S.A. Beebe v. Richardson, 156 Fla. 559, 23 So.2d 718 (1945).
It is pertinent to note that bordering the "LAKE" whose meander line is shown as the South line of the subdivision, is a tier of sixteen numbered lots, constituting Block 5, extending East and West along the border of the lake and entirely across the platted area except for the unmarked 30 feet on the West. The North line of Block 5 is the South line of Lake Shore Drive. It is also noted that the plat does not indicate that permanent reference monuments were located at the exterior boundaries of said Block 5. The statutory purpose of such monuments is to "provide definite reference points from which may be located any points, lines or lots set forth on the said plat" (F.S. 177.07, F.S.A.). The four monuments shown by the plat, together with the other data on the plat, adequately serve that purpose. Considering the plat as a whole, however, the four permanent reference monuments shown thereon do not serve to put purchasers of property on notice that the unnumbered lot of the defendants is excluded from the area subdivided and there is nothing in the recorded restrictions having that effect.
(e) The specific description of the property embraced in the subdivision, as shown by the plat, cannot be modified by ex parte acts or secret intentions of those who by the public records are shown to be bound by the restrictive covenants. Purchasers of property covered by lawful restrictive covenants running with the land, as here involved, may not be summarily divested of their rights. As hereinabove noted, F.S. 177.08, F.S.A. requires excepted parcels to be marked on the plat "Not included in this plat." The parcel here involved is not so marked and there is nothing on the plat or in the recorded restrictions by which to place a purchaser of property in the subdivision on notice that the subject parcel is excepted therefrom. Under the circumstances of this case, it is immaterial to the equities that the defendants and the surveyor who prepared the plat did not intend, as they have testified, to include said parcel in the subdivision or to have the restrictive covenants apply thereto. The plaintiffs were entitled to rely on the public records and are not bound by such secret intentions of which they had no knowledge.
In Malcolm v. Smith, 112 So.2d 395 (Fla. App. 1959), a parcel in a subdivision was designated "Big Unit, Drain Field, Clothes Yard," and other land shown on the plat was divided into lots and blocks. Several lots were conveyed subject to a restriction which prohibited clothes lines to be maintained thereon but permitted the owners to use the public clothes lines on the "Big Unit," the stated object being to maintain a residential area. The subdividers later *31 undertook to sell the building on the "Big Unit." The clothes lines were removed therefrom and work was commenced to convert the building into a motel. The Second District Court of Appeal sustained a final decree which required the purchaser of the "Big Unit" to vacate said property and enjoined him from interfering with its use as a public clothes drying yard. The decree also required the subdividers to restore the clothes lines and to reopen the building to plaintiffs' use for laundry purposes. The decision in that case is determinative of this appeal.
We do not think it necessary to labor the question of waiver or estoppel because it is apparent that the chancellor gave no weight thereto and based his conclusion on the sole premise that the subject unnumbered lot was not a part of the subdivision. Moreover, our review of the evidence fails to disclose facts warranting a finding of waiver or estoppel to defeat plaintiffs' claim to injunctive relief. The evidence establishes that plaintiffs promptly protested to defendants upon discovering their intention to violate the restriction, that they instituted this suit with reasonable dispatch, and that when their protest was first made known to defendants the work on the prohibited construction was not far advanced. Any further work undertaken by defendants was at their own risk. The limited type of commercial use acquiesced in by the plaintiffs, that is, the maintenance by defendants of an office on the subject parcel for the purpose of selling property in the subdivision, even if such use had ripened into a right to continue same  a matter which we do not undertake to decide  cannot be unilaterally expanded by the defendants to include the type of construction and proposed use here involved.
It is well established in this jurisdiction that even in the absence of a showing of irreparable injury injunctive relief is grantable as a matter of right, subject only to sound judicial discretion, to restrain the violation of a restrictive covenant affecting real estate. Stephl v. Moore, 94 Fla. 313, 114 So. 455 (1927). It is the theory of the law that every piece of land has a peculiar value, infringement of which is not readily remedial by assessment of damages of law. Cf. 29 Fla.Jur., page 555. And where the facts are clear and undisputed, the court by means of a mandatory injunction may compel the undoing of a thing already done in violation of such covenants. Daniel v. May, 143 So.2d 536 (Fla.App. 1962).
Accordingly, the decree appealed must be and it is reversed and this cause is remanded for further proceedings in accordance herewith.
WIGGINTON, J., and MURPHREE, JOHN A.H., Associate Judge, concur.