DENNIS J. LINDNER ET UX. *v.* PETER J.
WOYTOWITZ ET AL.

[No. 135, September Term, 1977.]

*Decided October 19, 1977.*

The cause was argued before MENCHINE, MASON and LISS, JJ.

*Peter V. Gargano* for appellants.

*Joseph L. Woytowitz,* with whom was *Peter J. Woytowitz* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

Dennis Lindner and his wife Jennifer are the appellants in this controversy arising out of their purchase of a one-acre lot located in the Tenth Assessment District of Baltimore County, at the intersection of Sweet Air and Manor Roads, being a part of the subdivision known as the Quinn Subdivision. The appellees, Peter J. Woytowitz and his wife,[1] purchased the entire 103-acre tract which is comprised in the subdivision in 1969. In August of 1969 they conveyed by deed the entire tract to Co-Far Holding Corporation, a straw corporation, and in that deed imposed certain restrictions, covenants and agreements on the land. In September 1969 the land was conveyed to Manor Development Corporation, the stock of which is fully owned by the appellees. Since the original restrictions were imposed, a total of 26 lots have been conveyed to purchasers, and in each instance the deeds of conveyance to the purchasers have referred to and incorporated the aforesaid restrictions, covenants and agreements.

The appellants purchased their lot in October of 1972 and pursuant to the requirements of the restrictions submitted for approval the plans and specifications for the erection of a one-family dwelling which were approved by the appellees. Appellants erected the proposed dwelling on the lot and were residing there at the time that the controversy between the

---

1. The cross appeal filed by the Woytowitzes as to the issue of counsel fees will be addressed in section 6 of this opinion, *infra.* For the purpose of convenience, those sections dealing with the original appeal will refer to the Lindners simply as appellants and the Woytowitzes as appellees.

parties began. The pertinent portions of the restrictions which are the subject matter of this case are stated as follows:

"No building, fence, wall, hedge, *or other structure* shall be commenced, erected, placed or altered in structure or color, on any lot, until the plans and specifications ... have been approved in writing by the developer, his assigns or duly appointed agent. .... In the event of a failure of the purchaser or purchasers of lots in QUINN to obtain the required prior written approval of plans, specifications and grading studies as established in this paragraph, said purchasers agree to reimburse the developer or his assigns for all costs and expenses to which he may have been put as a result of said failure, including but not limited to court costs and attorneys' fees." (emphasis supplied).

In the summer of 1976 appellants, concededly without prior approval, erected on their premises an above-ground type swimming pool of rigid construction, with a vinyl pool liner, placed on a mound of sand which was level with the ground. The top of the pool rose four feet above ground and had a diameter of eighteen feet. Accessories included a ladder for entering the pool and a water purifying apparatus outside the pool.

On July 24, 1976, a meeting was convened by Woytowitz at his home with four of the residents of the subdivision in attendance. A request for permission by another resident to erect a fence around an in-ground swimming pool was considered. One of the residents raised a question concerning the above-ground pool erected by the appellants without permission; and, after discussion, it was unanimously agreed that the pool was not suitable or desirable for the subdivision. It was determined at that meeting that two other above-ground pools had also been erected without prior permission, and the appellees notified all of the offending lot owners that the installation of the above-ground pools without the requisite permission was a

violation of the restrictive covenant contained in their deeds. The offending property owners were advised that the violations were to be corrected by removal of the above-ground pools. Appellants refused to comply and appellees filed a bill of complaint in the Circuit Court for Baltimore County in which they prayed that the court require removal of the above-ground pools and that they be awarded legal costs and other expenditures necessitated by the violation.

Testimony taken at the Circuit Court (DeWaters, J. presiding) disclosed that a neighbor of the appellants living at 3 Marmaduke Court had erected a similar above-ground pool in 1973, without prior permission, and that another neighbor had done likewise in 1975. Neither of the neighbors had been notified of any objection to their actions until after the meeting at the appellees' home in July of 1976.

At the conclusion of the testimony and argument of counsel, the trial court concluded that the restrictive covenants were still in full force and effect; that the above-ground swimming pool was a structure within the meaning of the covenants; that no prior permission had been obtained for the erection of the structure, and that the equitable doctrine of laches did not bar the enforcement of the restrictions in that there had been no abandonment of the uniform scheme of development. Based on these conclusions, the trial court issued a decree granting the relief prayed by the appellees and directed that the above-ground pool be removed within 60 days. It is from this decree that this appeal is filed by the appellants.

In its ruling the trial court refused to allow the appellees any recovery for legal costs and other expenditures incurred by reason of the violation of the covenants. From this portion of the court's ruling the appellees have entered a cross appeal.

Appellants raise five issues to be considered by this Court. They are stated as follows:

1. Did the lower court err by holding that the appellees established the fact that a uniform scheme or plan of

development was proven which prohibited above-ground swimming pools?

2. Did the lower court err in finding that the language of restrictive covenant number two precludes the erection of an above-ground swimming pool?

3. Did the lower court err in finding that the appellees were not prevented from enforcing the restrictive covenant number two on the theory of abandonment?

4. Was the lower court's ruling directing the appellants to remove the above-ground swimming pool too broad, based on the language in restrictive covenant number two?

5. Did the appellees fail to prove the allegations set forth in their bill of complaint with competent testimony?

(1)

The law of Maryland with respect to restrictive covenants was extensively discussed by Judge Hammond (later Chief Judge) of the Court of Appeals in *Turner v. Brocato*, 206 Md. 336, 345, 111 A. 2d 855, 860 (1954). There, citing with approval from *McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 128, 197 A. 580, 584 (1938), it was said:

> "These cases sufficiently establish as the law of this state these principles: That one owning a tract of land, in granting a part thereof, may validly impose upon the part granted restrictions upon the use thereof for the benefit of the part retained, and upon the part retained for the benefit of the part granted, or upon both for the benefit of both; that, where the covenants in the conveyance are not expressly for or on behalf of the grantor, his heirs and assigns, they are personal and will not run with the land, but that, if in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity . . . ."

The evidence in this case established without question that the restrictions imposed upon the land were intended by the grantors to be part of a uniform general scheme or plan of development. Each person purchasing in the subdivision was advised of the restrictions; each deed contained specific reference to the covenants and restrictions; and no house, fence or other structure, with the sole exception of the above-ground swimming pools, was erected without prior submission of the plans and specifications to the developer. The test for determining whether there is a common plan or scheme of development which permits the inference of intent that the restrictions were not for the personal benefit of the grantor but rather for the common advantage and benefit of all who purchased from him, has been stated as:

> "where there has been proof of a general plan or scheme for the improvement of the property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme, and the covenant has entered into the consideration of his purchase." *Mulligan v. Jordan*, 50 N.J. Eq. 363, 364-65, 24 A. 543, 544 (1892).

(2)

Appellants contend that even assuming that the restrictions are valid, the restriction against the erection of any "structure" on the lot without prior approval does not apply to above-ground swimming pools. We do not agree.

Structure is defined in Black's Law Dictionary (4th ed. 1968) as "Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. C. K. Eddy and Sons v. Tierney, 276 Mich. 333, 267 N.W. 852, 855."

The case of *Bloomfield v. Parizot*, 88 N.J. Super. 181, 211 A. 2d 230 (1965) is on point. In that case, above-ground swimming pools were erected in violation of the zoning

ordinance of the city of Bloomfield without first securing a building permit. Defendants contended that the pools were not structures within the meaning of the building code. The pools were quite similar to the pools here involved, being constructed of wooden studs with a plywood wall and a vinyl pool liner. They were placed on a sandbed level with the ground. The tops of the pools were above ground with a deck around the perimeter. The court held that a structure is defined as "any production or piece of work, artificially built up or composed of parts and joined together in some definite manner." *Id.* at 185, 211 A. 2d at 233. Our review of the record convinces us that the above-ground swimming pool erected in this case was a structure as contemplated by the restrictive covenant in the deed and required the approval of the developer before it could be erected.

(3)

Appellants next assert that the appellees have abandoned their rights to enforce the restrictive covenants and that violations of the covenant have been acquiesced in by the Woytowitzes so as to make the covenant unenforceable. They rely upon the fact that two similar above-ground swimming pools were erected in the development in violation of the restrictions. There was conflicting evidence as to whether the appellees were aware of the installation of the pools which had proceeded without prior permission. The appellees admitted to knowing of the erection of one of the pools but claimed reluctance to enforce the restriction because the pool was being used by an invalid child of the owner. They denied knowledge of the other two violations. From these facts appellants sought to have the trial court conclude that there had been an abandonment of the restrictions.

An intention to abandon is essential. The question whether there has been such an abandonment is in each case a question of fact and must be established by evidence clear and unequivocal of acts of a decisive nature. The Court of Appeals in *Kirkley v. Seipelt*, 212 Md. 127, 128 A. 2d 430 (1957), a case involving the installation of metal awnings in

violation of restrictions requiring prior submission and approval, said:

> "The real crux of the inquiry in determining whether there has been such a change in the neighborhood so as to defeat the covenant is to ascertain the purposes to be accomplished by the imposition of the restrictions. [W]e think the reasons for them were to develop an attractive and inviting community. From the evidence, it is apparent the reasons and objects for placing the restrictions on the property are as active and as alive today as they were when first imposed." *Id.* at 135, 128 A. 2d at 435.

The trial court which had the advantage of seeing and hearing the witnesses concluded that the appellees had enforced the restrictions as to the 26 lots already sold in the development and clearly intended to continue to enforce them as to the 77 lots remaining to be sold and developed. From our reading of the record we are unable to find that the trial court was clearly erroneous. Rule 1086.

(4)

Appellants contend that the trial court's order directing that the above-ground swimming pool be removed was too broad. We do not agree. The pool was erected without the prior submission and approval required by the covenants and restrictions accepted by the appellants when they purchased the property. *See Speer v. Turner,* 33 Md. App. 716, 366 A. 2d 93 (1976).

We point out that nothing in this opinion would preclude the appellants from submitting to the appellees for approval the plans and specifications for an above-ground swimming pool. Appellees would then be required to approve or disapprove in accordance with the principles enunciated in a number of cases, the most recent of which is *Harbor View Improvement Ass'n v. Downey,* 270 Md. 365, 372, 311 A. 2d 422, 426 (1973), where the Court of Appeals, quoting with

660

approval its opinion in *Carroll County v. Buckworth,* 234 Md. 547, 200 A. 2d 145 (1964), said:

> "Restrictions in similar terms requiring sub-mission and approval of plans have been upheld in *Peabody Heights Co. v. Willson,* 82 Md. 186, 32 A. 386; *Jones v. Northwest Real Estate Co.,* 149 Md. 271, 131 A. 446; and in *Kirkley v. Seipelt* [supra]. The latter cases show that approval or disapproval must be reasonable and that power must be exercised in good faith."

*See also* 20 Am. Jur. 2d *Covenants, Conditions, etc.* § 183 (1965); and Annot., *Restrictive Covenant — Consent to Build,* 40 A.L.R.3d 864 (1971).

(5)

Appellees sustained the gravamen of their case when they produced testimony that the appellants had erected the "structure" involved in this case without prior submission to and approval by the appellees in violation of the existing restrictions and covenants. We find no merit in the appellants' argument as to the sufficiency of the evidence.

(6)

Cross appellants, the Woytowitzes, contend that the trial court erred in refusing to allow reimbursement to them for costs and expenses to which they have been put as a result of the appellants' failure to abide by the covenants and restrictions, that reimbursement to include, but not be limited to, court costs and counsel fees. The short answer to their appeal is that they have not established any right to such an award. The original suit was filed by the appellees in proper person, both by the Woytowitzes and by Manor Development Corp. No testimony as to any expenses incurred by the cross appellants was offered in the trial court. While the request for reimbursement was made in the

original bill of complaint and was disposed of by the trial court in its decree, there is no evidence from which we could conclude that the trial court was clearly erroneous in its conclusion that the cross appellants were not entitled to counsel fees or other reimbursement. Md. Rule 1086.

*Decree affirmed; costs of original appeal to be paid by appellants; costs of cross appeal to be paid by cross appellants.*