522 A.2d 369

**PUBLIC SERVICE COMMISSION OF MARYLAND, et al.**

v.

**MARYLAND PEOPLE'S COUNSEL.**

No. 130, Sept. Term, 1985.

Court of Appeals of Maryland.

March 20, 1987.

2

Stephen J. Rosasco (Paul W. Davis, on the brief), Baltimore, for Baltimore Gas and Elec. Co.

Sandra Hall-Eckroade, Asst. Gen. Counsel (Kirk J. Emge, Gen. Counsel, on the brief), Baltimore, for Public Service Com'n of Maryland.

David A. Vorhis, Webb, Burnett, Jackson, Cornbrooks & Wilber, on the brief, Salisbury, for Delmarva Power and Light Co.

Philip J. Bray, on brief, Hagerstown, for The Potomac Edison Co.

William Dana Shapiro, Mary Donn Jordan and John J. Sullivan, on the brief, Washington, D.C., for Potomac Elec. Power Co.

Telemac N. Chryssikos and Harold D. Rhynedance, Jr., on the brief, Washington, D.C., for Washington Gas and Light Co.

Kirsten A. Burger, Asst. People's Counsel (Gregory V. Carmean, Acting People's Counsel and Thomas C. Gorak, Asst. People's Counsel, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

This case involves a constitutional challenge to COMAR subtitle 31, which sets forth the minimum procedural requirements that must be followed before a utility may terminate service to a residential customer.

The parties would have us address six issues in this appeal: (1) Does People's Counsel have standing to challenge regulations promulgated by the Public Service Commission (Commission)? (2) Does the mere promulgation of discretionary regulations present a ripe issue for review? (3) Does a utility's termination of service constitute state action? (4) Do the Commission's regulations violate due process because they fail to require a hearing before utility service is terminated? (5) If a hearing is required, is due process satisfied by a hearing before an employee of the utility? and (6) Did the circuit court exceed its power by

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ordering the Commission to adopt new termination regulations? The disposition we make in this case, however, only requires us to address the first two issues.

The parties stipulated to the following facts. On January 16, 1980, the Commission instituted Case No. 7413 to investigate "the reasonableness of existing procedures governing the termination of gas and electric service." Regulations were drafted and comments were solicited from interested members of the public. The regulations became final and effective on October 12, 1981. *See* COMAR 20.31.01 through .04.

The regulations provide, *inter alia*, a step by step procedure for handling a dispute between a customer and a utility regarding the termination of service. This procedure, however, is only the "minimum" procedure required, and a utility is free to provide additional safeguards to protect its customers. COMAR 20.31.01.04.B. Chapter 04 of the subtitle states that a utility is required to investigate any disputed bill and report its findings to the customer, who must then be given the opportunity to dispute or correct the reason or reasons for termination. The utility must then re-examine the dispute, make a decision regarding termination, and notify the customer of that decision. If the customer is still dissatisfied, he may file a complaint with the Consumer Assistance Section of the Commission. The Commission may dismiss the complaint if it determines that the customer has not negotiated in good faith with the utility or has failed to comply with subtitle 31. The regulations do not require the Commission to provide the customer with a hearing before dismissing his complaint. If a complaint is dismissed by the Commission, the utility is not required to terminate service, but may do so at its discretion. COMAR 20.31.04.03.I; *see also id.* 20.31.01.04.A.

On October 22, 1981, People's Counsel filed suit against the Commission in the Circuit Court for Baltimore City pursuant to Maryland Code (1957, 1980 Repl.Vol.), Art. 78,

§§ 90 and 91.[1]  People's Counsel sought a declaratory judgment "that certain regulations promulgated by the [Commission] are unconstitutional in that they fail to provide minimum due process safeguards to Maryland ratepayers."

The circuit court found that People's Counsel lacked standing, and the case was dismissed without prejudice. The Court of Special Appeals, in an unreported opinion, affirmed the trial court's decision and granted leave for People's Counsel to amend his pleadings. *People's Counsel v. Public Service Commission*, September Term, 1982, No. 869 (1983) (per curiam).  People's Counsel then brought suit under Maryland Code (1957, 1980 Repl.Vol., 1983 Cum. Supp.), Art. 78, § 89 and Maryland Code (1980), § 3–401 *et seq.* of the Courts and Judicial Proceedings Article.  Again, People's Counsel's only claim was that the regulations were unconstitutional.  On remand, the circuit court held, *inter alia,* that termination of residential utility service constitutes state action and that due process requires a pretermination hearing.  The circuit court therefore found the regulations to be unconstitutional and ordered the Commission to revise its regulations.  The parties filed cross-appeals in the Court of Special Appeals, but we granted certiorari before the intermediate appellate court reviewed the case.

I

The first issue we must address is whether People's Counsel has standing to bring suit under Art. 78, § 89. People's Counsel argues that the principles of res judicata bar us from reviewing this question.  He argues that the question of his standing under § 89 was settled between the parties when, on the first appeal, the Court of Special Appeals remanded the case stating that "[s]ection 89 specif-

1.  The following five privately owned utilities operating in Maryland were granted leave to intervene as party defendants: Baltimore Gas & Electric Company, Delmarva Power and Light Company, Potomac Edison Company, Potomac Electric Power Company, and Washington Gas Light Company.

ically provides the appellate course a party must follow in challenging the validity of the regulations." The Commission responds by arguing that the issue of standing under § 89 was not before the Court of Special Appeals in the first appeal, and thus res judicata does not bind this Court. We find that res judicata does not apply.

■ It is fundamental that the doctrine of res judicata only applies when there has been a final adjudication of the case. *Arundel Asphalt Products, Inc. v. Morrison-Johnson, Inc.*, 256 Md. 170, 173, 259 A.2d 789, 790–91 (1969). That is, the litigation must be complete and not merely interlocutory. People's Counsel's case was not finally adjudicated when the Court of Special Appeals granted People's Counsel leave to amend his pleadings. Rather than putting an end to the litigation, the mandate by the Court of Special Appeals permitted People's Counsel to continue his action. As such, the principles of res judicata cannot apply to the decision by the Court of Special Appeals.

■ Moreover, the law of the case doctrine does not preclude us from considering the standing issue. In *Loveday v. State*, 296 Md. 226, 234, 462 A.2d 58, 61–62 (1983), we held that a judgment of the Court of Special Appeals, on an earlier appeal in the same case, does not become the law of the case for this Court on review of a second judgment in the same case where the first judgment was not appealed. In the case at bar, the circuit court dismissed People's Counsel's suit under Art. 78, §§ 90 and 91 for lack of standing. On appeal, the Court of Special Appeals agreed that People's Counsel lacked standing under §§ 90 and 91, but granted People's Counsel leave to amend his suit and proceed under § 89. Although the decision of the Court of Special Appeals became the law of the case for the circuit court on remand, the intermediate appellate court's decision does not become the law of the case for this Court. Therefore, we must address People's Counsel's standing to bring suit under § 89.

People's Counsel asserts that as the representative of all Maryland residential utility customers, he has standing to bring suit under § 89. The Commission argues that People's Counsel has limited authority to bring suit and cannot institute an action under § 89 because no right of People's Counsel has been impaired. We find that People's Counsel has standing to proceed under § 89.[2] We explain.

Initially, a review of *Bosley v. Dorsey*, 191 Md. 229, 60 A.2d 691 (1948), is helpful. There, the Commission approved a gas rate increase and ordered a uniform rate base rather than a separate rate base for each of Consolidated Gas, Electric Light and Power Company's three lines of service. People's Counsel claimed that the Commission's order deprived residential consumers of due process and equal protection of the laws. People's Counsel attempted to appeal the order under Maryland Code (1939), Art. 23, §§ 359 and 415, which granted any "person in interest" the right to appeal a Commission order to the appropriate trial court. People's Counsel did not contend that he was personally injured by the Commission's order, but instead asserted that he had the right to appeal as an agent of the persons affected.

The *Bosley* Court was thus forced to decide whether People's Counsel was a "person in interest" under Art. 23, §§ 359 and 415. The Court noted that under Maryland Code (1939), Art. 23, § 353, People's Counsel had a duty to defend the public's interests before the Commission. This duty, however, did not "prevent 'any party or interest' in any proceeding before the Commission from appearing in person or from being represented by counsel." *Bosley v. Dorsey*, 191 Md. at 237, 60 A.2d at 694. The Court traced the history of People's Counsel and concluded that his duties were the same as the former Assistant Attorney

---

2. As we find People's Counsel has standing under § 89, we need not address or decide whether People's Counsel would have standing under Maryland Code (1984), § 3–401 *et seq.* of the Courts and Judicial Proceedings Article.

General. The Court held that although People's Counsel was authorized to represent the people at Commission hearings, he was not authorized to represent the people at court trials. The Court also noted that People's Counsel lacked the power to *appeal* a Commission order because it was the Commission's practice to "call upon People's Counsel to *support* its orders." *Id.* at 239, 60 A.2d at 695 (emphasis added). The Court therefore found that People's Counsel lacked standing to appeal the Commission's order. *Id.* at 240, 60 A.2d at 696; *accord State v. Burning Tree Club, Inc.,* 301 Md. 9, 37, 481 A.2d 785, 799 (1984) (because the Attorney General has the duty of defending the validity of Maryland statutes, he cannot seek a court declaration that a Maryland statute is unconstitutional).

■ The role and powers of People's Counsel have changed since the *Bosley* decision. In 1955, the General Assembly created a General Counsel of the Commission and redefined the responsibilities and powers of People's Counsel. *See* 1955 Md.Laws, ch. 441. General Counsel was given the duty of defending the Commission's rulings, and People's Counsel was given the duty of representing residential consumers. *See* Maryland Code (1957, 1980 Repl. Vol.), Art. 78, §§ 12–15. Thus, People's Counsel is no longer required to support the Commission's regulations. Instead, People's Counsel is charged with the duty of opposing the Commission's regulations whenever they adversely affect residential consumers. Consequently, the rationale of *Bosley* no longer prevents People's Counsel from challenging actions of the Commission and appearing in court on behalf of residential consumers.

The Commission finds it significant that following the *Bosley* decision, the General Assembly amended the predecessor to § 90 to specifically allow People's Counsel to appeal a Commission decision and order, but did not make a similar amendment to the predecessor of § 89, which controlled challenges to Commission rules and regulations. *See* 1949 Md.Laws, ch. 675. The Commission argues that the legislature's failure to amend § 89 demonstrates the

legislature's intent to preclude People's Counsel from proceeding under that section. This argument, however, fails to consider the broad powers and duties given to People's Counsel when the Code was amended in 1955.

■ People's Counsel is charged with evaluating all matters pending before the Commission to determine if residential users of utility services are affected. Maryland Code (1957, 1980 Repl.Vol.), Art. 78, § 15(a). Moreover, People's Counsel is given the power to "appear before the Commission and the courts *on behalf of those users*" in all cases where People's Counsel deems the interests of residential users are involved. *Id.* (emphasis added). Furthermore, People's Counsel is granted all the rights of counsel for a party to the proceeding. *Id.* Therefore, People's Counsel has standing to bring suit under § 89 to protect the interests of residential utility customers.[3]

## II

We must next determine if this case presents a justiciable issue. More specifically, we must decide if People's Counsel's challenge to the regulations is ripe for review. People's Counsel argues that the mere enactment of the utility termination regulations poses a threat to residential utility customers because they provide that a customer's service may be terminated without a hearing. The Commission argues that the regulations are discretionary and the record does not disclose that any utility has actually applied, or

---

**3.** The Commission also argues that the rights of People's Counsel are not threatened. This argument is misfocused because the relevant legal rights are not those of individuals comprising the Office of People's Counsel, but those of the residential customers that People's Counsel is statutorily obligated to protect. As previously stated, People's Counsel has the power to bring suit "on behalf of [residential] users in all matters or proceedings over which the Commission has original jurisdiction." Maryland Code (1957, 1980 Repl.Vol.), Art. 78, § 15(a). Thus, People's Counsel brings suit under § 89 not to protect his own rights, but to protect the rights of all residential utility customers in Maryland.

threatened to apply, the regulations to terminate a customer's service without a hearing.

We begin our analysis of the ripeness issue by reviewing the standard set forth in Art. 78, § 89. Section 89 states in pertinent part:

> The validity of any rule or regulation of the Commission may be determined upon petition for a declaratory judgment addressed to the Circuit Court for Baltimore City or to the circuit court for the county where the petitioner has its principal office in this State whenever it appears that the rule or regulation, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the petitioner.

Section 89 on its face allows the validity of a regulation to be determined when its application is only threatened, and thus pre-enforcement review is permitted. Our task today is to determine whether the mere existence of COMAR 20.31.01 through .04 is itself sufficient to constitute a "threatened application" that will interfere with the legal rights or privileges of residential utility customers.

We begin by noting that we have not previously examined ripeness under § 89. Similarly, we have not addressed ripeness under § 10–125 of the Maryland Administrative Procedure Act, which contains language identical to § 89.[4] In contrast, we have often decided ripeness under the Maryland Declaratory Judgment Act. *See Hatt v. Anderson,* 297 Md. 42, 464 A.2d 1076 (1983) and cases cited therein. The Declaratory Judgment Act, however, is a broad, general statute applying to all civil cases.[5] The Act

---

**4.** Maryland Code (1984), § 10–125(b) of the State Government Article states:
(b) *Authority to consider.*—A court may determine the validity of any regulation if it appears to the court that the regulation or its threatened application interferes with or impairs or threatens to interfere with or impair a legal right or privilege of the petitioner.

**5.** The Declaratory Judgment Act does not apply to divorces, annulments, and those cases where a special statutory remedy is provided.

sets forth the following standard for determining when a declaratory judgment action is ripe for review:

[A] court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

*Id.* § 3–409(a).

The standards for ripeness under Art. 78, § 89 and the Declaratory Judgment Act are obviously different. So too are the types of cases governed by the two standards. Therefore, in determining ripeness under § 89, we find that our prior decisions under the Declaratory Judgment Act provide us with little guidance.

Instead, we shall look to a trilogy of cases decided by the Supreme Court. These cases collectively analyze the ripeness of pre-enforcement challenges to administrative regulations. Although the test fashioned by the Supreme Court in these cases is based on general principles of ripeness,[6] and not language similar to Art. 78, § 89, it is nevertheless

---

Maryland Code (1984), § 3–409(b), (d) of the Courts and Judicial Proceedings Article.

**6.** The cases were brought under the Administrative Procedure Act, 5 U.S.C. §§ 701–704 (1964), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1964). Section 702 of the Administrative Procedure Act states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Section 2201 of the Declaratory Judgment Act permits review when there is an "actual controversy." The Supreme Court did not rely on the specific language of either statute in developing its test for ripeness.

helpful because it is specifically tailored to the pre-enforcement review of administrative regulations.

In the first case of the trilogy, *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the plaintiffs brought a pre-enforcement declaratory judgment action to invalidate a regulation promulgated by the Commissioner of Food and Drugs (Commissioner). The regulation provided that " '[i]f the label or labeling of a prescription drug bears a proprietary name, . . . the established name . . . *shall* accompany each appearance of such proprietary name.' " *Id.* at 138, 87 S.Ct. at 1510 (quoting 21 C.F.R. § 1.104(g)(1)) (emphasis added).

> In reviewing the ripeness doctrine the Court stated:
> [I]t is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Id.* at 148–49, 87 S.Ct. at 1515–16 (footnote omitted).

In examining the first aspect of ripeness, the Court determined that a purely legal issue was involved—whether the Commissioner exceeded his authority in promulgating the regulation. The Court also concluded that the regulation was a final agency action. Based on these two determinations, the Court concluded that the issue presented was appropriate for judicial decision.

In examining the second aspect of ripeness, the Court found that hardship would accrue to the plaintiffs if judicial review was withheld. The Court recognized that the plaintiffs were forced to either immediately comply with the regulations, at a substantial monetary cost, or not comply and risk serious criminal and civil penalties. Thus, the

plaintiffs faced a serious dilemma. Therefore, the pre-enforcement action to determine the validity of the regulations was deemed ripe. *Id.* at 148–56, 87 S.Ct. at 1515–20.

The second case of the Supreme Court's trilogy was a pre-enforcement action brought by the Toilet Goods Association (Association) to invalidate another regulation promulgated by the Commissioner. The regulation stated: " 'When it appears to the Commissioner that a person has ... [r]efused to permit duly authorized employees of the Food and Drug Administration free access to all manufacturing facilities ... he *may* immediately suspend certification service.' " *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 161, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967) (quoting 21 C.F.R. § 8.28) (emphasis added). Applying the first part of the ripeness test set out in *Abbott,* the Court held that even though a purely legal issue was presented—whether the regulation totally exceeded the agency's power under the statute—and the regulation was a final agency action, the issue was not ripe because these factors were outweighed by other considerations. The most important countervailing consideration was that the regulation was discretionary. The Court recognized that the regulation "serves notice only that the Commissioner *may* under certain circumstances order inspection ... and that further certification of additives *may* be refused to those who decline to permit a duly authorized inspection." *Id.* at 163, 87 S.Ct. at 1524 (emphasis in original). The Court stated that it could not yet determine whether or when an inspection would be ordered and what reasons might justify an inspection. Therefore, the Court concluded that the issue presented was not appropriate for judicial decision.

The Court also found that the issue presented did not satisfy the second prong of the *Abbott* test because the impact of the regulation could not be "felt immediately by those subject to it in conducting their day-to-day affairs." *Id.* at 164, 87 S.Ct. at 1524. The Court concluded that the primary conduct of those regulated was not affected and no harm would occur from denying judicial review before

enforcement. Consequently, the Court held that the Association's challenge to the validity of the regulation was not ripe for review.

The third case of the Supreme Court's trilogy involved another pre-enforcement action by the Association against three more of the Commissioner's regulations. *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). The regulations defined "color additives" and included diluents, finished cosmetics, and hair dyes within that category. The Court held that the case was fit for judicial decision because a purely legal issue was presented —"what general classifications of ingredients fall within the coverage of the Color Additive Amendments?" The Court reasoned that review of the regulations would not be facilitated by knowledge of the specific facts surrounding the regulation's enforcement. The Court also held that because the regulations were self-executing, they had an immediate and costly impact on the Association and its members. Moreover, because civil and criminal penalties were available to sanction those who failed to comply with the regulations, the Association and its members were faced with a dilemma. The Court concluded that the challenge to the regulations was ripe.

■ We share the Supreme Court's concern for both the conservation of judicial resources and the prevention of undue hardship on litigants. We think the Court's approach goes far in providing a proper balance between these two concerns. We hold that in determining whether an action is ripe under Art. 78, § 89, a two-step approach must be used. First, we must determine whether there is any reason to postpone judicial review. If we find that there is a reason to postpone judicial review, we must then determine if this reason is outweighed by the hardship caused to the parties if review is denied.

In determining whether to postpone judicial review we must attempt to conserve judicial resources for appropriate cases. We must also consider whether a court can make an

informed decision without the benefit of specific facts surrounding the regulation's enforcement. While we do not attempt to set out a comprehensive list of reasons for postponing judicial review, we find the following factors significant in this case.

■ An important consideration in allocating scarce judicial resources to appropriate cases is whether a challenged regulation is final and effective. Proposed regulations are often and easily changed by the Commission before they become final. Therefore, judicial resources are potentially wasted reviewing nonfinal regulations. Here, COMAR 20.-31.01 through .04 are final and effective. Thus, this consideration does not provide a reason to postpone review.

■ We also find that whether a legal or factual issue is presented is important in determining whether a court can make an informed decision without the benefit of the facts surrounding an enforcement of the regulation. Only a legal issue, of course, can be decided without the underlying facts of a particular enforcement. In the case *sub judice,* People's Counsel presents a legal issue—Do the regulations violate due process? As such, we find that this consideration does not provide a reason for postponement of judicial review.

■ Another important consideration in determining whether a court should await a specific factual scenario before rendering a decision is whether the regulation challenged is discretionary in nature. The review of a discretionary regulation, before that discretion has actually been exercised, is a difficult judicial task. Without concrete facts, a court is left to speculate as to how, when, and why a regulation is applied. In the case at bar, COMAR 20.31.-04.02.I provides that "[a] complaint made pursuant to this regulation *may* be dismissed and the utility *may* terminate the service if the Commission or its staff determines that the customer has not negotiated with the utility in good

faith or that the customer has otherwise failed to comply with the provisions of this subtitle." (Emphasis added). Similarly, COMAR 20.31.01.04.A and B provide that a utility *may* terminate service if it complies with the regulations and a utility *may* expand upon the subtitle's requirements to provide more customer protection. Consequently, it is plain that the regulations provide for discretion in the decision of whether to terminate service without a hearing.

People's Counsel has brought a pre-enforcement action and thus has not shown how discretion is exercised under the statute. We find that pre-enforcement review of CO-MAR 20.31.01 through .04 particularly difficult because the regulations are challenged on due process grounds, and " ' "[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Supreme Court applied the balancing test developed in *Mathews v. Eldridge* to determine what due process requirements are necessary before a municipal utility may constitutionally terminate service. The Court stated that *"some administrative procedure"* for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services. *Id.* at 18, 98 S.Ct. at 1564 (emphasis added). The Court concluded that "due process requires the provision of an opportunity for the presentation to a designated employee of a customer's complaint that he is being overcharged or charged for services not rendered." *Id.* at 16, 98 S.Ct. at 1564.

■ Under COMAR 20.31.04.03.F a utility is required to permit a customer to correct or dispute the reason or reasons for termination. Moreover, a customer has the right to file a written or oral complaint with the Commission regarding any proposed termination. COMAR 20.31.04.03.-

H. Finally, as noted above, both the Commission and the utility have the discretion of providing pretermination hearings. Thus, although it appears that the regulations provide "an opportunity for the presentation to a designated employee of a customer's complaint," we hesitate to make such a conclusion without a concrete case showing that this opportunity is actually presented and is indeed sufficient to satisfy due process. Consequently, we find good reason to postpone judicial review.

■■■ As we find a reason to postpone review, we must next consider the hardship on the parties if review is denied. We find that there is only a minimum hardship on residential utility customers. The regulations do not require immediate action or inaction and do not affect residential customers' day-to-day activities because the regulations only come into effect when there is a disputed termination. Moreover, residential customers are not faced with a dilemma under the regulations if review is postponed. Should a utility notify a customer of its intention to terminate service without a hearing, the customer or People's Counsel may then bring a declaratory judgment action to test the validity of the termination. Prior to enforcement of the regulation through the termination, or threatened termination, of service without a hearing, any interference of utility customers' rights is remote and hypothetical. We conclude that the hardship to the parties does not outweigh the reasons to postpone judicial review.

Accordingly, we find that the mere existence of COMAR 20.31.01 through .04 is insufficient to constitute a "threatened application" under Art. 78, § 89, and we hold that the issue presented by People's Counsel is not ripe for our consideration.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. PEOPLE'S COUNSEL TO PAY THE COSTS.*