943 A.2d 636 (2008)
178 Md. App. 636
Susan Lane SINGLEY, et al.
v.
COUNTY COMMISSIONERS OF FREDERICK COUNTY, Maryland, et al.
No. 2536, Sept. Term, 2006.
Court of Special Appeals of Maryland.
March 4, 2008.
G. Macy Nelson (Paul N. DeSantis on the brief), Towson, for Appellant.
Thomas O. Mills and Michael Chomel (John S. Mathias, County Atty. on the brief), Frederick, for Appellee.
Panel: KRAUSER, C.J., DEBORAH S. EYLER and ADKINS, JJ.
DEBORAH S. EYLER, Judge.
The Frederick County Board of Appeals ("Board") granted a special exception to Sugarloaf Properties, LLC ("Sugarloaf") to use its 25 ± acre property ("Property") for a Commercial Greenhouse/Nursery. The Property is situated in the Agricultural Zone.
In the Circuit Court for Frederick County, Susan Singley and other neighbors of the Property ("Protestants"), a total of 54 individuals and one organization, the Eternal Springs Association, brought an action for judicial review, challenging the Board's decision. The court upheld the decision.
The Protestants are the appellants in this Court. They raise four questions for review, which we have rephrased as follows:
I. Did the Board err in granting the special exception because the proposed use is not a Commercial *639 Greenhouse/Nursery under the Frederick County Code?
II. Did the Board err in granting the special exception because the proposed use does not meet the standard set forth in Schultz v. Pritts, 291 Md. 1, 432 A.2d 1319 (1981)?
III. Did the Board err in granting the special exception because the requirements of Frederick County Code section 1-19-48(B) were not met?
IV. Did the Board err in granting the special exception because the proposed use does not meet the minimum road frontage requirements of Frederick County Code section 1-19-138(c)?
Sugarloaf and the Frederick County Commissioners are the appellees in this Court.
For the following reasons, we shall affirm the judgment of the circuit court.

APPLICABLE ZONING ORDINANCE SECTIONS AND HOLDING OF SCHULTZ V. PRITTS

Frederick County Code ("Code") section 1-19-48, entitled "Special Exceptions," provides, in pertinent part:
(B) A grant of a special exception is basically a matter of development policy, rather than an appeal based on administrative error or on hardship in a particular case. The Board of Appeals should consider the relation of the proposed use to the existing and future development patterns. A special exception shall be granted when the Board finds that:
(1) The proposed use is consistent with the purpose and intent of the Comprehensive Development Plan and of this chapter; and
(2) The nature and intensity of the operations involved in or conducted in connection with it and the size of the site in relation to it are such that the proposed use will be in harmony with the appropriate and orderly development of the neighborhood in which it is located; and
(3) Operations in connection with any special exception use will not be more objectionable to nearby properties by reason of noise, fumes, vibration, or other characteristics than would be the operations of any permitted use not requiring special exception approval; and
(4) Parking areas will comply with the off street parking regulations of this chapter and will be screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum safety.
(5) The road system providing access to the proposed use is adequate to serve the site for the intended use.
(C) In addition to the general requirements listed above, uses requiring a special exception shall be subject to the specific requirements for each use outlined in §§ 1-19-376 through 1-19-394 of this Code.
(D) A special exception approval may be granted in accordance with the general and specific requirements enumerated in this section. The Board of Appeals may, in addition to the other requirements imposed under this chapter[,] and is hereby authorized to[,] add to the specific requirements any additional conditions that it may deem necessary to protect adjacent properties, the general neighborhood, and its residents or workers. . . .
Code section 1-19-289 permits the grant of a special exception for "Commercial *640 Greenhouses and Nurseries," in the Agricultural Zone.
The seminal Maryland case about special exceptions in zoning law is Schultz v. Pritts, supra, 291 Md. 1, 432 A.2d 1319. There, the Court stated:
The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible absent any facts or circumstances negating the presumption. The duties given the Board are to judge whether the neighboring properties in the general neighborhood would be adversely affected and whether the use in the particular case is in harmony with the general purpose and intent of the plan.
Whereas, the applicant has the burden of adducing testimony which will show that his use meets the prescribed standards and requirements, he does not have the burden of establishing affirmatively that his proposed use would be a benefit to the community. If he shows to the satisfaction of the Board that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm and disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the Board to decide. But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal.
Id. at 11-12, 432 A.2d 1319 (emphasis in original).
After reviewing the case law about adverse effect, the Schultz Court explained:
[A] special exception use has an adverse effect and must be denied when it is determined from the facts and circumstances that the grant of the requested special exception use would result in an adverse effect upon adjoining and surrounding properties unique and different from the adverse effect that would otherwise result from the development of such a special exception use located anywhere within the zone. . . . [T]he appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone.
Id. at 15, 432 A.2d 1319 (emphasis added).

FACTS AND PROCEEDINGS
The Property is raw land, owned by Sugarloaf and leased to Holston Brothers. On November 23, 2004, Sugarloaf filed an application for special exception with the Board, seeking to use the Property for a commercial greenhouse and nursery, with added snow removal operations off-season. On December 20, 2004, the Board conducted a site visit. Three days later, on December 23, it held a public hearing, at the conclusion of which the members voted to *641 grant the special exception with 12 conditions and restrictions.[1] The Board's written opinion to that effect was issued on January 27, 2005.
The Protestants challenged the Board's decision in an action for judicial review in the Circuit Court for Frederick County. On October 6, 2005, the court issued a memorandum opinion and order vacating the Board's decision and remanding the matter to the Board for further proceedings. Specifically, the court 1) agreed with the Board's decision that the proposed use meets the definition of a "commercial greenhouse/nursery" in the Code; 2) determined that whether land used for commercial purposes had to be located on a lot abutting a paved public road for 80 feet was not an issue ripe for decision; 3) found that certain procedural issues raised before the Board lacked merit; 4) determined that, in finding that the special exception request satisfied the criteria of the Code, the Board's decision failed to articulate reasons, as required by case law; and 5) determined that the Board failed to articulate how the proposed use complies with the standard set forth in Schultz v. Pritts.
On remand, the Board reviewed the transcript of, and evidence taken at, the December 23, 2004 hearing. Then, on February 23, 2006, it held a public hearing, at the conclusion of which it made findings. On March 23, 2006, the Board issued a 10-page memorandum opinion setting forth its final decision granting the special exception.
The Protestants again filed an action for judicial review on April 19, 2006. On December 28, 2006, the court issued a memorandum opinion and order affirming the Board's final decision. The Protestants noted a timely appeal.
We shall include additional facts in our discussion of the issues.

DISCUSSION

I.

(a)
In their initial action for judicial review, the Protestants argued, among other issues, that the Board's decision that the proposed use of the Property is a "Commercial Greenhouse and Nursery," within the meaning of that term in Code section 1-19-289, was legally incorrect and not supported by substantial evidence in the record. The court ruled that the Board's decision on that point was correct and was factually supported. As noted above, the court nevertheless vacated the grant of the special exception and remanded the matter to the Board to articulate the basis for its other findings.
*642 The Protestants did not note an appeal to this Court from that part of the court's decision approving the Board's finding that the proposed use is a "Commercial Greenhouse and Nursery." In their second circuit court action for judicial review, the Protestants did not re-raise that issue, as it already was decided.
Now, on appeal to this Court, the Protestants challenge the Board's decision, in the first action for judicial review, that the proposed use meets the definition of a "Commercial Greenhouse and Nursery" in the Code. Sugarloaf responds that the Protestants waived this issue for appellate review by not taking an appeal from the circuit court's ruling on the issue in 2005. It maintains that, under Schultz v. Pritts, supra, the circuit court's judgment in the first action for judicial review was a final judgment, and thus was appealable under Md.Code (1974, 2006 Repl.Vol.), section 12-301 of the Courts and Judicial Proceedings Article ("CJ"); and, therefore, by not taking an appeal at that time from the part of the judgment approving the Board's "Commercial Greenhouse and Nursery" decision, the Protestants waived any appellate challenge to that issue. In addition to Schultz v. Pritts, Sugarloaf relies upon Murray Int'l v. Graham, 315 Md. 543, 555 A.2d 502 (1989), and Chestnut Real Estate P'ship v. Huber, 148 Md.App. 190, 811 A.2d 389 (2002), in support.
The Board advances a similar but not identical procedural argument. It maintains that by not taking an immediate appeal from the circuit court's decision in the initial action for judicial review affirming the Board's "Commercial Greenhouse and Nursery" finding, the Protestants "abandoned" that issue for appellate review. It cites Mayor & City Council of Baltimore v. Dembo, Inc., 123 Md.App. 527, 719 A.2d 1007 (1998), in support.
In response, the Protestants argue that, although they could have taken an appeal from the circuit court's judgment in the initial action for judicial review, they were not required to do so; and therefore they neither waived nor abandoned an appellate challenge to the circuit court's rulings in the first action for judicial review, including its approval of the "Commercial Greenhouse and Nursery" decision of the Board. They rely upon Brewster v. Woodhaven Bldg. & Dev., Inc., 360 Md. 602, 759 A.2d 738 (2000), and cases cited therein, for support.
In our view, the Protestants have the better part of this argument.
In the case at bar, there are two levels of review as of right of the Board's final administrative agency decisions. Pursuant to the Administrative Procedure Act, Md. Code (1984, 2004 Repl.Vol.), section 10-222(c) of the State Government Article ("SG"), and Rules 7-201, et seq., the circuit court has original jurisdiction to review the Board's decisions in an action for judicial review. Thereafter, this Court has appellate jurisdiction to review the judgment of the circuit court in the action for judicial review. See SG § 10-223(b). In both the circuit court action for judicial review and in this appeal from the judgment in that action the task on review is essentially the same: to determine whether the agency decision is supported by substantial evidence in the record and is legally correct. Cinque v. Montgomery County Planning Bd., 173 Md.App. 349, 359-60, 918 A.2d 1254 (2007).
In two cases that can be analogized to the case at bar, in that they arise in the context of a two-tier review structure, the Court of Appeals has had occasion to consider whether a party's failure to immediately challenge a first-level reviewer's decision, when that reviewer affirmed in part but remanded in part the lower body's *643 decision, precludes a subsequent challenge, in the same case, to the first-level reviewer's decision.
In Loveday v. State, 296 Md. 226, 462 A.2d 58 (1983), a circuit court in a criminal case refused to impose what the State maintained was a mandatory 25-year sentence for the defendant's robbery conviction and instead imposed a 10-year sentence. The State appealed, and this Court, in an unreported opinion, held that a mandatory 25-year sentence was applicable. We vacated the sentence and remanded the case to the circuit court for further sentencing proceedings. The defendant did not file an application for writ of certiorari in the Court of Appeals.
On remand, the sentencing judge reluctantly imposed a 25-year sentence. The defendant noted an appeal, challenging the imposition of the 25-year sentence on several grounds. This Court affirmed the judgment. The defendant filed a petition for certiorari, which was granted. The first question the Court of Appeals addressed was whether it was precluded from deciding the mandatory sentencing issue because the issue had been decided by this Court in the first appeal but had not been challenged thereafter by way of a petition for certiorari.
The Court analyzed the issue under the law of the case doctrine, by which a decision of a superior court on an issue in a given case is binding on remand upon the lower court in the same case. See Reier v. State Dept. of Assessments & Taxation, 397 Md. 2, 20-21, 915 A.2d 970 (2007); Schisler v. State, 177 Md.App. 731, 742, 938 A.2d 57 (2007). The Court concluded that that doctrine does not apply and bind it to accept a decision of this Court on an issue rendered in an earlier appeal in the same case, but not challenged by means of a petition for certiorari when made. Specifically, the Court observed that "the law of the case doctrine does not apply to" an appellate court such as itself, that "is required to review judgments of subordinate courts." Loveday, supra, 296 Md. at 234, 462 A.2d 58. Accordingly, it was not precluded from addressing and deciding the question whether a mandatory 25-year sentence applied to the defendant's conviction, even though the defendant had not sought Court of Appeals review of that issue when this Court first decided it, prior to the remand.
In Pub. Serv. Comm'n v. Md. People's Counsel, 309 Md. 1, 522 A.2d 369 (1987), the Court engaged in a similar analysis. In that case, People's Counsel brought a circuit court action against the Public Service Commission ("PSC") challenging the constitutionality of certain regulations the PSC had adopted. The action was brought pursuant to a specific statutory section of former Article 78 of the Maryland Code. The circuit court dismissed the action upon a finding that People's Counsel did not have standing to bring suit under that statutory section. People's Counsel took an appeal to this Court, which held in an unreported opinion that the circuit court's standing decision was correct but that the dismissal should have been granted with leave to amend to sue under another statutory section, which did afford standing. On remand, People's Counsel amended the complaint. Ultimately, the circuit court ruled on the constitutional issue, deciding that the regulations violated due process. The PSC noted an appeal to this Court. Before we issued a decision, the Court of Appeals granted certiorari on its own motion.
Before the Court of Appeals, the PSC argued, among other issues, that the Court of Appeals could not address the issue of standing, because People's Counsel had not sought certiorari review of this Court's *644 standing decision in the first appeal. The Court rejected that argument, reasoning that because a judgment of this Court in a prior appeal in the same case is not the law of the case for the Court of Appeals on review of a second judgment in the same case, it could address the issue of standing.
Although not analyzed in the context of the law of the case doctrine, Brewster, supra, 360 Md. at 619, 759 A.2d 738, also is analogous and lends strong support to the position that, in the case at bar, the "Greenhouse/Nursery" issue has not been waived or abandoned for appellate review. In Brewster, certain riparian landowners in Baltimore County sued certain businesses in Carroll County, asserting that they had polluted the common stream connecting the parties' properties, thereby damaging the landowners' riparian rights. The suit was filed in the Circuit Court for Baltimore County. The defendant businesses moved to dismiss for lack of venue and on the doctrine of forum non conveniens. The court accepted the forum non conveniens argument and transferred the case to the Circuit Court for Carroll County.
The landowners noted an appeal to this Court from the transfer order. We dismissed it on the ground that the order was not a final judgment, under CJ section 12-301, and was not otherwise appealable. The Court of Appeals granted certiorari and reversed. It held that an order transferring venue of a case from one circuit court to another is a final judgment because it terminates the litigation in the particular transferor court; and therefore the party opposing the transfer may challenge it by way of an immediate appeal of that final judgment. The Court further held that the party opposing the transfer may wait to challenge it in an appeal from the final judgment entered at the conclusion of the litigation in the transferee court.
With respect to the first aspect of its holding, that the transfer order was a final judgment, the Court of Appeals observed that a final judgment may be a judgment that terminates the litigation in a particular court or forum, notwithstanding that the litigation will continue in another court or forum. In support, it cited three of its cases holding that a circuit court order in a judicial review action remanding the case to the agency for further proceedings is a final judgment, as it terminates the litigation in the circuit court. See E. Stainless Steel v. Nicholson, 306 Md. 492, 501-02, 510 A.2d 248 (1986); Brown v. Baer, 291 Md. 377, 385-86, 435 A.2d 96 (1981); Dep't of Pub. Safety & Corr. Servs. v. LeVan, 288 Md. 533, 543-44, 419 A.2d 1052 (1980).
With respect to the second aspect of its holding, that the party opposing the transfer order may take an immediate appeal or may challenge the transfer ruling at the conclusion of the litigation in the transferee court, the Court observed:
We have often permitted an appeal from a judgment ultimately disposing of a case based on an issue that could have been, but was not, made the basis of an earlier appeal. Probably the circumstances closest to the present case is when a party first contends before the trial court that it should not be ordered to arbitrate, is ordered to arbitrate, does not take an immediate appeal from that order terminating the proceeding in the trial court, submits to arbitration, and appeals the issue only after an arbitration award has been confirmed by the trial court.
Brewster, supra, 360 Md. at 619, 759 A.2d 738 (citing Curtis G. Testerman Co. v. Buck, 340 Md. 569, 667 A.2d 649 (1995)); Bd. of Educ. for Dorchester County v. Hubbard, 305 Md. 774, 786-87, 506 A.2d *645 625 (1986). Finally, citing Pub. Serv. Comm'n v. Maryland People's Counsel, supra, 309 Md. 1, 522 A.2d 369, and Loveday v. State, supra, 296 Md. 226, 462 A.2d 58, the Court pointed out that "[s]till another situation in which a party has a right to seek appellate review of a judgment deciding an issue, but may forego that right and later raise the issue by seeking appellate review of a subsequent judgment, involves review of judgments by intermediate appellate courts remanding cases." Brewster, supra, 360 Md. at 621-22, 759 A.2d 738.
The procedural posture of the case at bar is akin to the cases discussed by the Court in Brewster. The circuit court's judgment in the initial action for judicial review approving the Board's ruling that the proposed use is a "Greenhouse/Nursery" under the Code but vacating the grant of the special exception and remanding the matter to the Board for further proceedings on other issues was a final judgment, and thus was subject to appeal when it was entered. The appellees had the right to forego taking an appeal from the circuit court's judgment, however, and to wait until after the circuit court entered its judgment in the second action for judicial review, after the remand before the Board, to challenge the Board's "Greenhouse/Nursery" decision in this Court. Not only do Brewster and the other cases discussed above compel that holding but also the holding advances the well established Maryland policy against piecemeal appeals. See In re: Katherine C., 390 Md. 554, 558, 890 A.2d 295 (2006).
The cases that the appellees rely upon to support their waiver and abandonment arguments are distinguishable or not relevant. Murray Int'l v. Graham, supra, 315 Md. 543, 555 A.2d 502, and Chestnut Real Estate P'ship v. Huber, supra, 148 Md. App. 190, 811 A.2d 389, concern the circumstances under which the decision of an administrative agency will have res judicata or collateral estoppel effect. Those doctrines are not in play given the posture of the case at bar, i.e., that there is but one case being litigated between the parties. Mayor & City Council of Baltimore v. Dembo, Inc., supra, 123 Md.App. 527, 719 A.2d 1007, holds that a party to an appeal to this Court from a circuit court action for judicial review of an agency decision may waive the party's right to argue an issue on appeal if the issue was not raised or decided by the circuit court. In the case at bar, the issue was raised in the circuit court, in the first action for judicial review.
Accordingly, the issue of whether the Board erred in ruling that the proposed use of the Property is a "Greenhouse/Nursery," as defined in the Code, is properly before us in this appeal.

(b)
The Protestants contend that the Board erred in ruling that Sugarloaf's proposed use of the Property is a "Commercial Greenhouse and Nursery" so as to be permitted by special exception in the Agricultural Zone, under Code section 1-19-289. They assert that the Board's ruling on this issue is purely one of law, that should be accorded no deference on review; that the various uses that will take place on the Property as proposed by Sugarloaf do not fall within the controlling definitions of "greenhouse" and "nursery"; that the Board should not have taken into account that there are other similar, though smaller, landscaping businesses that are located nearby and that were granted special exceptions; and finally that, because some of the structures Sugarloaf intends to build at the site will meet the definitions of uses under the Code that are not permitted generally or by special exception in the Agricultural Zone, for instance, a "contractor's office," the rules of statutory construction *646 compel a decision that Sugarloaf's proposed use of the Property does not fall within the meaning of "Commercial Greenhouse and Nursery."
A court's role in reviewing an adjudicatory decision of an administrative agency is to determine whether there is substantial evidence in the agency record as a whole to support the agency's factual findings and conclusions and whether the agency's decision is based upon an erroneous conclusion of law. Marzullo v. Kahl, 366 Md. 158, 171, 783 A.2d 169 (2001); United Parcel Serv., Inc. v. People's Counsel for Baltimore County, 336 Md. 569, 577, 650 A.2d 226 (1994).
In applying the substantial evidence test to an agency's factual findings, we determine "`whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" Marzullo, supra, 366 Md. at 171-72, 783 A.2d 169 (quoting Bulluck v. Pelham Wood Apts., 283 Md. 505, 512, 390 A.2d 1119 (1978)). We review the agency's factual decisions, including the inferences it draws from its first-level factual findings, in the light most favorable to the agency, with deference to the knowledge and expertise of those people who constitute the agency. Id. at 172, 783 A.2d 169. We will affirm an agency's ruling on a factual matter if the issue is fairly debatable and the ruling "is supported by substantial evidence, such that a reasonable mind might accept as adequate to support a conclusion, even if there is substantial evidence to the contrary." Bowman Group v. Moser, 112 Md.App. 694, 699, 686 A.2d 643 (1996).
Statutory construction is an issue of law. Del Marr v. Montgomery County, 397 Md. 308, 315, 916 A.2d 1002 (2007). When interpreting the meaning of part of a county or local zoning code, we attempt to ascertain the intention of the drafters from the plain meaning of the words of the ordinance and we apply the canons of statutory construction when necessary to elucidate the meaning of the language. The Court of Appeals made clear in Marzullo that, "with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." 366 Md. at 172, 783 A.2d 169 (citing Lussier v. Md. Racing Comm'n, 343 Md. 681, 696-97, 684 A.2d 804 (1996)); see also Angelini v. Harford County, 144 Md.App. 369, 373, 798 A.2d 26 (2002). Thus, "the expertise of [an] agency in its own field should be respected." Marzullo, supra, 366 Md. at 172, 783 A.2d 169.
In the case at bar, the Board's decision that Sugarloaf's proposed use of the Property is a "Commercial Greenhouse and Nursery," is a mixed question of law and fact that, under the dictates of Marzullo v. Kahl, supra, we review by applying a deferential standard that respects the Board's expertise in interpreting and applying the Code it administers. Accordingly, the question we must answer on review is whether the qualification vel non of the proposed use of the Property as a "Commercial Greenhouse and Nursery" is fairly debatable, that is, whether a reasoning mind could reasonably find that the proposed use indeed meets that qualification; and if so, whether there was substantial evidence in the record to support the Board's finding on that issue.
Code section 1-19-289 does not contain a definition of "Commercial Greenhouse and Nursery." Therefore, under Code section 1-19-4(a)(9), those words are to be given their ordinarily accepted definitions, as defined in Webster's New Collegiate *647 Dictionary, 1974 Edition. In that reference, "greenhouse" is defined as "a glassed enclosure used for the cultivation or protection of tender plants" and "nursery" is defined as "an area where plants (as trees and shrubs) are grown for transplanting, for use as stocks for budding and grafting, or for sale."
Sugarloaf's proposed use for the Property, as submitted in support of its special exception application, is to operate a landscaping and wholesale nursery business with off-season snow removal services. The operation will have some administrative and maintenance employees on-site and will have off-site workers who only will be present on-site briefly in the mornings and evenings. No retail sales will be involved. The business will operate generally from dawn to dusk, Monday through Friday, plus Saturdays, in season. To support its operation and planting areas, Sugarloaf will erect an office, storage and shop area, equipment shop, equipment and material storage areas, greenhouses, storage bins, and above-ground fuel storage containers. Thirty-five trucks will be stored on site. One tractor-trailer delivery of landscaping materials per week is expected. After-hours operations will be limited to managing snow events.
In response to the concerns expressed by the Protestants, the Board granted the special exception application conditioned upon limitations to the scope and intensity of Sugarloaf's proposed use. See n. 2, supra. It capped the number of employees and trucks allowed on the site; limited the types of trucks and lighting and signs that may be used; imposed requirements for the storage of snow removal chemicals; and confined the hours of operation to dawn to dusk, with no operation on Sundays and holidays. In addition, the Board required Sugarloaf to address all other agency comments and secure the approval of the Frederick County Department of Public Works for the entrance driveway ingress and egress in advance of building.
The Board concluded that the proposed use, as so conditioned and limited, meets the definition of a "Commercial Greenhouse and Nursery." The circuit court agreed, stating:
There is substantial evidence that a reasonable mind might accept the Boards [sic] conclusion that Sugarloaf's proposal, with the Board's limitations imposed, does fall within the definition of commercial greenhouse/nursery, despite there being evidence to the contrary.
On appeal, the Protestants contend that Sugarloaf's proposed use of the Property is a "light industrial use," not a commercial greenhouse and nursery. They emphasize the off-site snow removal services as not being related to plant cultivation. They argue, moreover, that the "expressio unius est exclusio alterius" principle of statutory interpretation supports their conclusion, i.e., that, because uses such as "Equipment and Material Storage Yard" and "Contractor's Office" are expressly permitted in other zones, those components of Sugarloaf's proposed use must not be permitted in the Agricultural Zone.
We agree with the circuit court that, even though Sugarloaf's plans include some elements that are outside the strict dictionary definitions of "greenhouse" and "nursery," the question whether the proposed use qualifies as a "Commercial Greenhouse and Nursery" is fairly debatable and the agency record contains substantial evidence to support the Board's conclusion that it does. The Board is not constrained by principles of statutory construction to find that a proposed use is not a "greenhouse" or "nursery" merely because uses that it finds will be accessory to the principal use, that are permitted in other zones but not in the Agricultural *648 Zone, also will be present at the site. It is within the Board's expertise to ascertain the principal proposed use and to fashion conditions and limitations that in its judgment will make the principal use and accessory uses most compatible with surrounding properties.[2]
The evidence before the Board showed that the proposed use centers around the cultivation of plants. There was testimony that there will be cold frame greenhouses for temporary winter cover of plants; a tree planting area for nursery stock; seedling plantings, dedicated areas of planting, and wholesale nursery sales; deliveries of nursery stock in bulk; and storage of plants on site. The drawings submitted by Sugarloaf in support of its application show two greenhouses, each 100 feet long, and 3½ acres of plant materials.
The Board's decision that the proposed use of the Property is a "greenhouse" and "nursery" is not legally incorrect, is supported by substantial evidence in the record, and is not arbitrary or capricious.

II.
The Protestants next contend that the Board's decision to grant the special exception violated the standard established in Schultz v. Pritts because the Board improperly "shifted the burden of proof" to them to show that the proposed use at the Property will cause adverse effects above and beyond the adverse effects that would be associated with the proposed use regardless of its location within the zone.
As the Court of Appeals explained in Schultz v. Pritts, a special exception is a use that the local legislative body has determined is permissible in a particular zone, so long as certain statutory criteria are met. Therefore, if the statutory criteria are satisfied, the applicant for the special exception need not prove that the proposed use will have a beneficial effect in the zone in which it is to be located. The legislative body already has made that determination. And, with respect to any adverse effects, "the appropriate standard to be used . . . is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone." Schultz, supra, 291 Md. at 15, 432 A.2d 1319. It is the applicant's burden to prove that standard.
In the initial action for judicial review, the court determined that the Board had not sufficiently articulated its decision that the special exception application satisfied the Schultz v. Pritts adverse effect standard and remanded the matter to the Board to do so. The remand order properly stated that the burden is on the special exception applicant, here, Sugarloaf, to show that the particular use at the particular location will not have any adverse effects above and beyond those inherently associated with the use wherever it might be located in the zone.
On remand, the Board found as follows with respect to the Schultz v. Pritts adverse effect standard:

*649 The Board finds and concludes that the facts before [it] do not establish that the proposed use at this particular location will have any adverse effects above those inherently associated with such a special exception use irrespective of its location within the zone. The facts before the Board as to adverse effects of the proposed special exception use are those raised by the Protestants at the hearing.
A number of Protestants voiced concerns related to sight distance on Manor Wood Road and the ability of the road to handle the traffic generated by the use. The Board finds that sight distance issues will be dealt with at the site plan review and the Board is not convinced that the proposed use as limited by the Board will generate sufficient traffic to constitute [a] hazard, based on the evidence before the Board.
Another concern raised by the Protestants related to tractor-trailer deliveries to the site. Based on the evidence, the Board cannot find that an average of one tractor-trailer trip per week to the site will create an adverse effect here greater than that created irrespective of the location of the use within the zone.
Other concerns raised by the Protestants relate to concerns about noise, dust, fumes, and vibrations. The Board is unpersuaded that that [sic] the proposed use, as limited by the Board, will have an adverse impact on adjoining properties. The Board finds that the existing tree buffer and location of the buildings several hundred feet from adjoining properties, and the limitations imposed by the Board, minimizes the impact, if any, of noise, dust, fumes, and vibration. The Board further notes that the concerns as expressed by the Protestants are very general in nature. They did not point to the manner in which the proposed use would have an adverse impact at this location greater than it would [sic] elsewhere in the Agricultural Zone. The Protestants did not testify or introduce evidence as to what aspect of the proposed special exception use would generate noise, dust, fumes, or vibration that would be objectionable. The [P]rotestants did not offer testimony or evidence that would persuade the Board to find that the proposed use at this location would have any adverse effects above and beyond those inherently associated with such a use irrespective of its location within the zone. Under these circumstances, the evidence before the Board is insufficient to persuade the Board to find that the adverse effects, if any, of the proposed use at the proposed location would have an adverse impact above and beyond those inherently associated with such a use irrespective of its location within the zone. To do so would require the Board to engage in speculation and make factual findings beyond the scope of the facts in the record.
The Protestants seize upon some of the language used by the Board in its Schultz v. Pritts analysis to argue that the Board improperly placed the burden on them to show that the greenhouse and nursery use at the Property will cause adverse effects greater than those inherent in that same use regardless of its location in the zone, when the burden in fact was on Sugarloaf to show that the greenhouse and nursery use at the Property will not cause adverse effects greater than those inherent in the use regardless of its location in the zone. Furthermore, the Protestants complain that Sugarloaf could not possibly have satisfied its burden of proof of lack of adverse effects under Schultz v. Pritts because it did not introduce "mitigation" evidence to refute the *650 adverse effects evidence they (the Protestants) introduced.
The Board by its language did not shift, and therefore improperly allocate, the burden of proof with respect to the issue of adverse effects. Its opinion correctly states the Schultz v. Pritts standard, which, in effect, requires the special exception applicant to prove a negative, i.e., that there are no adverse effects of the proposed use at the proposed location that exceed the adverse effects inherently associated with the use regardless of its location in the zone.
In its written opinion on remand, the Board begins its analysis by recognizing that the only facts in evidence to show adverse effects are the facts put in evidence by the Protestants. In other words, on Sugarloaf's evidence, the Board finds there are no facts to show that there will be adverse effects from a greenhouse and nursery at the Property above and beyond the adverse effects such a use would produce anywhere in the Agricultural Zone. That finding alone is sufficient for Sugarloaf to have satisfied the Schultz v. Pritts standard.
The Board then goes on to identify and evaluate the particular items of adverse effects evidence introduced by the Protestants, and to reject each one. In so doing, the Board comments that it is "not convinced," is "unpersuaded," and the like. In so commenting, the Board is giving its assessment of the evidentiary value (actually, lack of value) of the Protestants' adverse effects evidence, not misstating the burden of proof. Evidence on an issue can be deemed unpersuasive by a fact-finder regardless of whether the party offering it bears the burden of proof on the issue.
The Board here heard the Protestants' evidence of what they claimed would be the adverse effects of locating the greenhouse and nursery use on the Property, as proposed by Sugarloaf, as opposed to locating it elsewhere in the zone, and did not credit it. The Protestants argue that, because Sugarloaf did not put on evidence to counter their adverse effects evidence, it failed to meet its burden of proof under Schultz v. Pritts. This argument is flawed. As we have explained, Sugarloaf met its threshold burden in its own case by introducing evidence that, in the Board's assessment, did not show that locating its proposed use on the Property would result in adverse effects over and above those that would result from locating it elsewhere in the Agricultural Zone. The Protestants then introduced contrary evidence. The Board was free to accept or reject that evidence; it was not bound to accept it unless Sugarloaf introduced rebutting or, in the Protestants' terminology, "mitigating" evidence.

III.
The Protestants next contend that the Board erred in granting the special exception because the requirements of Frederick County Code section 1-19-48(B) were not met. In other words, they assert that there is not substantial evidence in the agency record to support the Board's findings about the criteria stated in that Code section.
As discussed above, under Code section 1-19-48(B), the Board must find that the proposed use is consistent with the purpose and intent of the Comprehensive Development Plan; that the nature and intensity of the operations to be conducted in connection with the use and the size of the site in relation to the use "are such that the proposed use will be in harmony with the appropriate and orderly development of the neighborhood in which it is located"; that the operations undertaken in connection with the proposed use "will *651 not be more objectionable to nearby properties by reason of noise, fumes, vibration, or other characteristics than would be the operations of any permitted use not requiring special exception approval"; that the parking areas for the use will comply with the off-street parking regulations and will be screened "from adjoining residential uses" and "the entrance and exit drives shall be laid out so as to achieve maximum safety"; and that "the road system providing access to the proposed use is adequate to serve the site for the intended use." In its opinion on remand, the Board made express findings in favor of Sugarloaf's proposed use for the Property, on all five criteria.
With respect to the Board's finding that the proposed use is consistent with the purpose and intent of the Comprehensive Development Plan, the Protestants complain that the Regional Plan for the Adamstown area, in which the Property is located, states that Manor Woods Road is "to be improved to minor arterial status," but the Board found that that same road, "which serve[s] the [P]roperty[,] is classified as an arterial road on the Comprehensive Plan." The Protestants argue that the Board's finding is inconsistent with the Comprehensive Plan for that reason. We disagree. The plan for the Adamstown Region in fact designates Manor Woods Road as a minor arterial road within the Adamstown Region. To the extent that the plan itself contains possibly contradictory language about the status of Manor Woods Road, that does not undercut the factual basis for the Board's finding.
The Protestants also complain that the Board "did not address the goals of preserving agricultural lands and prime agricultural soils" in granting the special exception and that there was not substantial evidence in the record on this issue. Their argument is in essence a recapitulation of their own testimony before the Board that ignores the other evidence, which was substantial, that granting the special exception for the use proposed by Sugarloaf would not detract from the goal of preserving agricultural lands and prime soils.
The Protestants make two assertions about the Board's finding that the nature, intensity, and size of the proposed use "will be in harmony with the appropriate and orderly development of the neighborhood in which it is located." First, they complain that the Board did not adequately define the neighborhood in which the Property is located. They acknowledge, however, that, in Handley v. Ocean Downs, LLC, 151 Md.App. 615, 645, 827 A.2d 961 (2003), we held that a zoning board, in deciding whether to grant a special exception, need not "explicitly define the neighborhood." We note, furthermore, that the agency record describes the Property by address and by location: on the north side of Manor Woods Road, one-half mile west of Maryland Route 85, just outside of Buckeystown, in the Adamstown Planning Region. It also contains several maps that show the Property's location and its surrounding environs. There is nothing in the record to suggest that any party was ignorant of or confused about the neighborhood that the Board was considering in making its findings.
Second, their lack of substantial evidence argument on this criterion again focuses only on the evidence they adduced, and not on the evidence adduced by Sugarloaf and not on the contrary evidence. In fact, the agency record contains evidence that the Property is situated one-half mile northwest of the intersection of Manor Woods Road and Route 85 in an area in which there is another landscaping company, a tree farm, another farm, and residential properties, all facts that would support a reasonable finding that the proposed use *652 will be harmonious with the existing neighborhood. Moreover, the conditions imposed by the Board in granting the special exception will result in a less intense use of the Property than originally proposed, and were imposed to accomplish that aim. It is not for the Protestants or this Court to debate the issue of neighborhood harmony when there is some evidence in the record, sufficient to meet the not very onerous "substantial evidence" standard, supporting the Board's finding.
The Protestants' arguments about the last three criteria under Code section 1-19-48(B) likewise fail. The Board found that the operations in connection with the special exception use will not be more objectionable to nearby properties, due to noise, fumes, vibration, or other characteristics, than would be the operations of any permitted use at the same site. The evidence showed that other permitted uses within the Agricultural Zone include large-scale pig and turkey farms, dairy operations, rubble fill or landfill operations, and sawmills. A reasoning mind could find that the landscaping operation proposed for the Property, as limited by the imposition of conditions, will not be more objectionable due to noise, fumes, or vibrations, or any other characteristic, than would be any of those permitted uses.
Finally, the fourth criterion in Code section 1-19-48(B) provides: "Parking areas will comply with the off-street parking regulations of this chapter and will be screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum safety." As the Board points out, there was no argument made before it that the parking areas would not comply with the off-street parking regulations. Moreover, there was evidence adduced that the parking, buildings, and other operations would be screened from adjoining residential uses, and that the entrance and exit drive were drawn to be facing an existing driveway across the street, and therefore would not create a safety hazard. The agency record contains substantial evidence to support the Board's finding on this criterion.

IV.
The Protestants' last contention is that the Board erred in granting the special exception because the Property does not meet the minimum road frontage requirement of Code section 1-19-138(c), which is a county road ordinance. Before granting the special exception, however, the Board ruled that, during the site plan process, Sugarloaf would have to address all comments by county agencies, which would include the frontage requirement. The Board ruled that the frontage requirement issue was not ripe at the special exception stage of this matter, and will not become ripe until the site plan stage, and on that basis did not address it.
In their initial brief, the Protestants cover this issue in one paragraph that does not include any legal argument as to why the Board's ruling on this point is wrong. Their reply brief also contains no legal argument on this issue. With nothing before us to challenge the Board's finding that the issue was not ripe, we shall not disturb it.
JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.
NOTES
[1] The conditions are:

1. Allowed for up to 8 office personnel, 2 mechanical and 35 seasonal workers.
2. Allowed up to 18 trucks as per testimony.
3. The inventory of plant materials are as proposed.
4. Address all agency comments.
5. Storage of deicing chemicals will be inside storage only.
6. No retail sales may take place onsite.
7. Lighting will be dusk to dawn and will not create glare on to adjacent properties.
8. Hours of operation are dawn to dusk daily excluding Sundays and holidays and snow events.
9. The entrance drive access/egress shall be as approved by county Department of Public Works.
10. Truck types are limited to 1 ton and 5 ton type vehicles.
11. Signs are to meet code. If the applicant cares to light them he may do so.
12. The Applicant is bound by all testimony and exhibits.
[2] The Protestants complain that the Board took into account, in deciding the nature of the proposed use, that special exceptions had been granted for two nearby properties, also for "greenhouse" and "nursery" uses. They argue that the Board acted improperly in doing so because the decisions in those two cases have no legal effect on the use issue in this case. The Board did not make a legal ruling with respect to those other properties. Rather, it considered their nearby presence as a matter of fact in ruling on the nature of the proposed use for the Property.